**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

PAUL SMITH,

                                        Plaintiff,

        v.                                                          No. 11-CV-282
                                                                        (NAM/DRH)

JOSEPH A. ROCK, Superintendent, Upstate
Correctional Facility; RICHARD MacWILLIAMS,
Correctional Officer, Upstate Correctional Facility;
C. ROCK, Correctional  Officer, Upstate Correctional
Facility; BUSHY, Officer, Upstate Correctional
Facility; UHLER, Deputy of Security, Upstate
Correctional Facility; TIMOTHY A. DEBYAH,
Correctional Officer; HUNGERFORD, Sgt.; and T.
RAMSDELL, Correctional Officer, Upstate
Correctional Facility,

                                        Defendants.

_____

**APPEARANCES:**                                    **OF COUNSEL:**

PAUL SMITH
Plaintiff Pro Se
00-A-2268
Upstate Correctional Facility
Post Office Box 2001
Malone, New York 12953

HON. ERIC T. SCHNEIDERMAN                MICHAEL G. McCARTIN, ESQ.
Attorney General for the                          Assistant Attorney General
    State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

                        **REPORT-RECOMMENDATION AND ORDER**[1]

_____

        [1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Plaintiff pro se Paul Smith ("Smith"), an inmate in the custody of the New York State Department of Correctional and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, eight DOCCS employees, violated his constitutional rights under the Eighth Amendment.  Compl. (Dkt. No. 1).  Presently pending is defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b).  Dkt. No. 22.  It appears that Smith opposes the motion.  Dkt. Nos. 41, 42.  For the reasons which follow, it is recommended that defendants' motion be granted but that Smith be afforded an opportunity to amend his complaint.


## I. Background

## A. Facts

The facts are related herein in the light most favorable to Smith as the non-moving party. See subsection II(A) infra.

On December 27, 2010, while being escorted to the Office of Mental Health in Upstate, Smith was attached by defendants MacWilliams and C. Rock and several other unnamed officers.  Compl. at 5.  No injuries were reported.  Oh January 10, 2011, Smith was attacked again, which resulted in injuries to his back and spine.  Id. at 5.  No individuals were identified as participating in this attack.  On January 18, 2011, Smith was interviewed by a third party, who conducted the interview in an unprofessional manner.  Compl. at 5.  On January 27, 2011, after being taken back to the Mental Health Unit, Smith was attacked by defendants Debyah and the escort team, later identified as defendants Ramsdell and Bushy.  Compl. at 5-6.  Additionally, Smith was "slandered . . . with all sort[s] of racial comments [and] attacks . . . ."  Id. at 5.  Smith also states that defendants MacWilliams and

Debyah threaten him every day.  Id. at 7.

On January 27, 2011, Smith was escorted, limping, to the medical unit for an examination.  Compl. at 5-6.  A "bogus" examination was completed by a nurse who failed to treat Smith's injured back and spine.  Id.  The medical staff, none of whom were named as defendants in this action, also allegedly switched Smith's pain medications to "poisoness [sic]" to ibuprofen, which Smith was precluded from taking due to a stomach condition. Id. at 6.

Lastly, Smith claims that defendant Superintendent Rock and Uhler authorized all of the attacks on Smith.  Compl. at 6.  This was based upon a conversation between the three where Smith asked the defendants, on a scale of 0-100, how high would they rated their confidence in corrections officers.  Id. at 9.  Uhler responded a ninety-five and Rock walked away, which Smith contends indicated their knowledge and acceptance of the assaults perpetrated on him.  Id.

Smith claims that since the end of December 2010, he was not allowed to see a doctor regarding his back and spine issues until the end of February 2011.  Compl. at 9.  When Smith was finally permitted to see a physician, it was determined that "something in the bone in [his] back [wa]s damaged . . . ," but medical staff still refused to treat him with pain medication other than the ibuprofen which was dangerous given Smith's unidentified stomach condition.  Id.

In subsequent letters to the Court, Smith has indicated repeatedly that he wishes the action to be dismissed and that he cannot properly carry on because he does not have any documentary or tangible proof for his case.  Dkt. No. 20 at 3-4; Dkt. No. 26 at 1-2; Dkt. No. 30 at 1; Dkt. No. 31 at 1-2.  Smith appears to assert that his exhibits were lost somehow

3

because of an altercation with another inmate in April 2011, which left him with four stitches in his mouth.  Dkt. No. 20 at 3-4; Dkt. No. 24 at 1-2; Dkt. No. 26 at 1; Dkt. No. 31 at 1. Smith also wrote a letter alluding to vision problems which were a consequence of an attack he suffered.  Dkt. No. 41.[2]

## II.  Discussion

Smith claims that his Eighth Amendment rights were violated when he was assaulted and when he failed to receive the appropriate medical attention.  Defendants seek dismissal because (1) there is no merit to his Eighth Amendment claims; (2) Smith has failed to plead the personal involvement of certain defendants; and (3) defendants are entitled to qualified immunity.

## A. Legal Standard

Rule 12(b)(6) authorizes dismissal of a complaint that states no actionable claim.  When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).  However, this "tenet . . . is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S.

---

[2] The cause of this injury is unclear.  If this injury is related to the assaults alleged in the complaint, then they are relevant to the present motion.  If this injury is related to a subsequent assault, it is irrelevant to the present case.  Therefore, the complaint should be amended to clarify either the physical injuries sustained during the assaults already identified in the complaint or to re-plead the events in the complaint to include the subsequent attacks.

Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (holding that "entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . [as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

Accordingly, to defeat a motion to dismiss, a claim must include "facial plausibility . . . that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556 (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (citations omitted).  Determining whether plausibility exists is "a content specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950-51.

When, as here, a party seeks dismissal against a pro se litigant, a court must afford the non-movant special solicitude. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir.2006); see also Sealed Plaintiff v. Sealed Defendant # 1, 537 F.3d 185, 191-92 (2d Cir.2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally.' " (citations omitted)).

## B. Personal Involvement

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a

5

prerequisite to an award of damages under § 1983.'" <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d

Cir. 1994) (quoting <u>Moffitt v. Town of Brookfield</u>, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus,

supervisory officials may not be held liable merely because they held a position of authority.

<u>Id.</u>; <u>Black v. Coughlin</u>, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may

be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged
> constitutional violation,
>
> (2) the defendant, after being informed of the violation through a report
> or appeal, failed to remedy the wrong,
>
> (3) the defendant created a policy or custom under which
> unconstitutional practices occurred, or allowed the continuance of such
> a policy or custom,
>
> (4) the defendant was grossly negligent in supervising subordinates
> who committed the wrongful acts, or
>
> (5) the defendant exhibited deliberate indifference to the rights of
> inmates by failing to act on information indicating that unconstitutional
> acts were occurring.

<u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995) (citing <u>Williams v. Smith</u>, 781 F.2d 319,

323-24 (2d Cir. 1986)).[3]

---

[3] Various courts in the Second Circuit have discussed how, if at all, the <u>Iqbal</u>
decision affected the five <u>Colon</u> factors which were traditionally used to determine
personal involvement.  <u>See</u> <u>McCarroll v. Fed. Bureau of Prisons</u>, No. 08-CV-1343
(DNH/GHL), 2010 WL 4609379, at *4 (N.D.N.Y. Sept. 30, 2010) (noting that although the
Second Circuit has not yet addressed <u>Iqbal</u>'s impact on the five <u>Colon</u> factors, several
district courts have done so); <u>Kleehammer v. Monore County</u>, 743 F. Supp. 2d 175
(W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third <u>Colon</u> categories pass
<u>Iqbal's</u> muster . . . ."); <u>D'Olimpio v. Crisafi</u>, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010)
(disagreeing that <u>Iqbal</u> eliminated <u>Colon's</u> personal involvement standard).

### 1.  Hungerford

Sgt. Hungerford is listed as a defendant, but is not mentioned anywhere in the complaint.  As such, Smith has failed to plead that he was either directly or indirectly involved in any of the alleged constitutional violations.  Even drawing all inferences in Smith's favor, without having any indication of what Hungerford allegedly did, or did not do, there is no way to conclude that he was personally involved in any of the complained of events.  Accordingly, defendants' motion should be granted on this ground and Hungerford should be dismissed as a defendant.

### 2. Medical Personnel

Personal involvement of defendants is required to receive compensation under Section 1983.  This also requires that inmates name, as defendants, all parties allegedly involved in the constitutional violations which occurred.  Smith asserts various Eighth Amendment medical care violations, including that the examinations he received were inadequate and the pain medication provided to him was dangerous.  However, Smith failed to specify by name any of medical personnel as defendants in the case.  Thus, while they may have been involved in the alleged deprivation of his rights, relief is not available because they were not named as a defendant.  Accordingly, defendants' motion should be granted on this ground and all unnamed medical personnel should be dismissed as defendants.

### 3. Superintendent Rock and Uhler

A position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement.  There is nothing in the complaint to indicate that Rock

and Uhler were informed of the alleged constitutional violations which occurred or had an opportunity to intervene or correct them.  There is also nothing in the complaint to substantiate that there was a policy or custom in place which deprived inmates of their constitutional rights, or that insufficient supervision occurred.  All that Smith contends is that after a very brief conversation with them, in which Uhler answered Smith's question evidencing confidence in his men and Rock walked away, their responses were indicative of a long-standing plot against inmates.  There is nothing alleged in the complaint to allow such a conclusion to be drawn.  Accordingly, defendants' motion should be granted on this ground and Superintendent Rock and Uhler should be dismissed as defendants.

### 4. MacWilliams, C. Rock, Debyah, Ramsdell & Bushy

These defendants were all named in the complaint as individuals who assaulted Smith. MacWilliams and C. Rock allegedly attacked Smith on December 27, 2010.  Debyah, Ramsdell, and Bushy also allegedly attacked and verbally berated Smith on January 27, 2011.  MacWilliams and Debyah also allegedly threaten Smith on a daily basis. Accordingly, each of these defendants has been identified as directly involved with the constitutional violations which Smith suffered.  Accordingly, defendants' motion should be denied on this ground as to these defendants.

### C. Excessive Force

The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain."  Gregg v. Georgia, 428 U.S. 153, 173 (1976); Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000).  To bring a claim of excessive force

8

under the Eighth Amendment, a plaintiff must establish both objective and subjective elements. Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999). The objective element is "responsive to contemporary standards of decency" and requires a showing that "the injury actually inflicted is sufficiently serious to warrant Eighth Amendment protection." Hudson, 503 U.S. at 9 (internal citations omitted); Blyden, 186 F.3d at 262. However, "the malicious use of force to cause harm constitute[s] [an] Eighth Amendment violation per se" regardless of the seriousness of the injuries. Blyden, 186 F.3d at 263 (citing Hudson, 503 U.S. at 9); see also Wilkins v. Gaddy, 130 S. Ct. 1175, 1176-77 (2010) ("The core judicial inquiry . . . was not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10 (citations omitted). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" Sims, 230 F.3d at 22 (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." Id. at 21 (citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Id. (quoting Hudson, 503 U.S. at 7). In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: "the extent of the injury and the mental state of the defendant[;] . . . the need for the application of force; the

9

correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted).

"Complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." Barr v. Abrams, 810 F.2d 358, 363 (2d Cir.1987).  In this case, Smith has alleged conclusory allegations that MacWilliams and C. Rock attacked him on December 27, 2010 and that  Debyah, Ramsdell and Bushy attacked him on January 27, 2011.  While Smith provides the names of defendants, and the date and place of the attack, he fails to include any specifics about how he was attacked, why, or what injuries he suffered as a result.  Smith indicates that after the January 27 attack, he was limping when he was transported to the medical department, but the cause and duration of the limp is unknown.  Additionally, after an attack earlier in January, where Smith fails to name any individual participants, he contends that the condition in his back and spine worsened.  However, the origin of that condition, its exact diagnosis and prognosis, and the length of time from which Smith has suffered from it are all unknown. Moreover, to the extent that Smith alleges that Ramsdell, Bushy, MacWilliams and Debyah were verbally abusive to him, such contentions are insufficient to establish a basis for relief. Allegations of verbal harassment alone are not actionable under § 1983.  See Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1996).

Accordingly, defendants' motion on this ground should be granted.

10

**D. Qualified Immunity**

Finally, defendants claim that even if Smith's constitutional claims are substantiated, they are entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. 2003).  However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified or good faith immunity might still be available as a bar to a plaintiff's suit if it was objectively reasonable for the public official to believe that his acts did not violate those rights."  Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights of which a reasonable person would have known were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.  Here, the second prong of the inquiry need not be reached concerning Smith's claims because, for the reasons discussed above, he has failed to raise a question of fact as to the first prong of the inquiry.

Accordingly, in the alternative, defendants' motion should be granted on this ground as well.

11

### III. Opportunity to Amend

The failure to allege personal involvement and detail the factual background related to the alleged constitutional violations are fatal to Smith's action.  However, the Second Circuit has cautioned courts in this District from dismissing pro se complaints "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002) (quoting Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991)).  With a more detailed factual recitation, the Court would be in a better position to assess whether the alleged assaults and subsequent medical treatment were in violation of the Eighth Amendment.  Thus, because it is conceivable that Smith could allege facts supporting one or more of his claims and could specifically identify by name individuals not so identified to date who were allegedly responsible for his injuries, it is recommended that Smith be afforded the opportunity to file an amended complaint to attempt to satisfy these deficiencies pursuant to 28 U.S.C. § 1915(e)[4].

In the event the district court adopts this recommendation, Smith is advised that in preparing any amended complaint,  Any such amended complaint, which shall supersede and replace in its entirety the previous complaint filed by Smith, must contain a caption that clearly identifies, by name, each individual that Smith is suing in the present lawsuit and

---

[4] Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case **at any time** if the court determines that  . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B) (emphasis added).  Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action.

must bear the case number assigned to this action.  Smith must also clearly state the nature of the suit and the basis for this Court's jurisdiction.  The body of Smith's amended complaint must contain sequentially numbered paragraphs containing only one act of misconduct per paragraph.  Thus, if Smith claims that his civil and/or constitutional rights were violated by more than one defendant, or on more than one occasion, he should include a corresponding number of paragraphs in his amended complaint for each such allegation, with each paragraph specifying (i) the alleged act of misconduct; (ii) the date on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the location where the alleged misconduct occurred; and, (v) the connection between such misconduct and plaintiff's civil and/or constitutional rights.

Smith's amended complaint shall also assert claims against each and every defendant named in such complaint; any defendant not named in such pleading shall not be a defendant in the instant action.  Smith is further cautioned that no portion of any prior complaint shall be incorporated into his amended complaint by reference.  Smith shall state in the single amended complaint all claims that he wishes this Court to consider as a basis for awarding Smith relief herein; his failure to file such a pleading will result in dismissal of this action without further Order of the Court.

Conversely, if Smith truly intends on dismissing his complaint as his correspondence has thus far indicated, Smith may dismiss the complaint by filing either a notice or stipulation of dismissal pursuant to the procedures outlined in Fed. R. Civ. P. 41(a).

13

## IV.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that:

    1. Defendants' motion to dismiss (Dkt. No. 22) be **GRANTED** as to all claims and all defendants <u>without prejudice</u>; and

    2. Smith is granted forty-five days after the district court's decision on this report-recommendation to file and serve and amended complaint as described above.   **PAUL SMITH SHALL TAKE NOTICE** that if this report-recommendation is adopted by the district court, and if he fails to file an amended complaint within the period specified by the district court, the complaint herein may be dismissed and this action terminated, in which case Smith may be barred from asserting the clams in his complaint at any other time or in any other jurisdiction or venue.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation." N.Y.N.D.L.R. 72.1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)).  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  <u>Roldan v. Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993); <u>Small v. Sec'y of HHS</u>, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated: February 17, 2012
      Albany, New York

                           United States Magistrate Judge